**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA

      v.                                                  No. 06-CR-411
                                                                    (LEK/DRH)

RAYMOND VanHOESEN and JERMAINE
VanHOESEN,
                                                    Defendants.

_____

**APPEARANCES:**                                  **OF COUNSEL:**

HON. GLENN T. SUDDABY                    RICHARD S. HARTUNIAN, ESQ.
United States Attorney for the               Assistant United States Attorney
   Northern District of New York
Room 218
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924

GASPAR M. CASTILLO, ESQ.
Attorney for Raymond VanHoesen
817 Madison Avenue
Albany, New York 12208-3302

HON. ALEXANDER BUNIN                     GEORGE E. BAIRD, JR., ESQ.
Federal Public Defender for the              Assistant Federal Public Defender
   Northern District of New York
Attorney for Jermaine VanHoesen
39 North Pearl Street, 5th Floor
Albany, New York 12207

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

     Presently pending is the motion of the United States pursuant to Fed. R. Crim. P.

44(c) to disqualify Gaspar M. Castillo, Esq. ("Castillo") from representing defendant

Raymond VanHoesen ("VanHoesen") in the above-captioned case because of Castillo's

prior representation of individuals related to this case.  VanHoesen opposes the motion.

For the reasons which follow, the motion is denied.

## I. Background

### A. Procedural History

In 2003, Jermaine VanHoesen ("Jermaine"), VanHoesen's cousin, was charged in

Albany County Court with possession and attempted distribution of crack cocaine.

Jermaine retained Castillo as his lawyer.  The charges arose from events on February 20,

2003 in Albany when a police informant arranged through a drug source to purchase crack

cocaine.  A meeting was scheduled to complete the sale and Jermaine appeared at the

appointed time and place.  When police approached Jermaine in his car to effect an arrest,

Jermaine sped off, leading to a chase during which police observed Jermaine throw drugs

from the car.  Jermaine was apprehended, tried, and found guilty on April 2, 2004.  People

v. VanHoesen, 31 A.D.3d 805-06 (3d Dep't 2006) ("VanHoesen I").  The conviction was

reversed on appeal on July 6, 2006 and remanded for retrial.  Id.  The case remained

pending trial in Albany County Court until on or about July 12, 2007 when the prosecution's

motion to dismiss in favor of federal prosecution was granted.  Jermaine was represented

throughout VanHoesen I by Castillo.  That representation terminated with the dismissal on

July 12, 2007.

On October 15, 2004, VanHoesen was arrested pursuant to a complaint which

charged him with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  United States v.

VanHoesen, No. 04-M-449 (filed Oct. 14, 2004) ("VanHoesen II").  The complaint alleged

that on March 6, 2002, a search warrant was executed at VanHoesen's apartment in the City of Albany and a quantity of crack cocaine was seized.   VanHoesen II Docket No. 1. Castillo appeared as retained counsel for VanHoesen and on October 19, 2004, VanHoesen was released on conditions.  Id. at Docket No. 4.  On November 9, 2004, the United States moved to dismiss the complaint in favor of a prosecution of the charge in state court and leave to dismiss the complaint was granted.  Id. at Docket No. 11.

In the state prosecution ("VanHoesen III"), VanHoesen was again represented by Castillo.  That proceeding concluded with a plea to a misdemeanor by VanHoesen.  On April 1, 2005, a federal indictment was returned against VanHoesen again charging him in one count with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  United States v. VanHoesen, No. 05-CR-166 (filed Apr. 1, 2005) ("VanHoesen IV").  The single substantive charge alleged that from 1988 to date, VanHoesen distributed over fifteen grams of crack cocaine in Albany and included the charge which was the subject of VanHoesen II and III. VanHoesen IV Docket No. 1.  Castillo appeared as retained counsel for VanHoesen, who was ordered detained pending trial.  Id. at Docket No. 4.  That charge remained pending and VanHoesen remained detained for approximately eighteen months until the indictment was dismissed without prejudice on October 13, 2006 for violation of the Speedy Trial Act, 18 U.S.C. § 3161.  Id. at Docket No. 28.

Six days later, the indictment in the above-captioned case ("VanHoesen V") was returned charging both VanHoesen and Jermaine in Count 1 with conspiracy to distribute in excess of fifty grams of crack cocaine from March 2002 to date and in Count 3 with the February 20, 2003 possession of crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841 and 846.  VanHoesen V Docket No. 12.  Count 2 charges only VanHoesen

with the March 6, 2002 possession of crack cocaine with the intent to distribute which was the subject of VanHoesen II, III, and IV.  Count 3 alleges the same criminal conduct which was the subject of VanHoesen I.  The United States asserts in Count 3 that it was VanHoesen who received the telephone call from the police informant and arranged for Jermaine to deliver and sell the crack cocaine.  VanHoesen has again retained Castillo to represent him in VanHoesen V.  Jermaine is represented in VanHoesen V by separate appointed counsel.

### B. Conflicts

In addition to representing Jermaine in VanHoesen I, Castillo previously was retained to represent Jermaine in Albany County Court on criminal charges of murder and weapons possession.  After a jury trial, Jermaine was acquitted of the murder charge but found guilty of the weapons charge.  He was sentenced to a three-to-six year term of imprisonment on August 22, 2000 and that conviction was affirmed on appeal.  People v. VanHoesen, 3 A.D.3d 787 (3d Dep't 2004).

In the present case, the United States has proffered that it will establish the conspiracy alleged in Count 1 principally through the testimony of approximately ten individuals who witnessed or participated in narcotics transactions with VanHoesen and Jermaine.  Six of those potential witnesses previously retained Castillo to represent them on criminal charges in Albany-area courts.  All such proceedings, and Castillo's representation of those individuals, have been concluded and Castillo no longer has any retainer agreement with any of those potential witnesses.

**C. Waivers**

At VanHoesen's initial appearance and arraignment, the United States made the instant motion to disqualify Castillo.  Hearings on this motion were held on July 3 and 17, 2007 during which Castillo confirmed the prior representations of Jermaine and potential witnesses described above in VanHoesen's presence.  During the hearing on July 3, 2007, Jermaine, represented by separate counsel, waived the protection of the attorney-client privilege as to any communications he has had with Castillo.  At the same hearing, VanHoesen was advised of the dangers of proceeding in this case represented by Castillo in light of Castillo's prior representations of others.[1]  See United States v. Levy, 25 F.3d 146, 152-55 (2d Cir. 1994); United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986); United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982).[2]

VanHoesen was given two weeks to consider whether he wished to waive any objections to proceeding with  Castillo as his attorney and a second attorney was appointed by the Court to consult with and advise VanHoesen on this question.  See Docket No. 33. At the hearing on July 17, 2007, VanHoesen affirmed again that he wished to proceed in this case represented by Castillo and that he waived any objection to any conflicts created by Castillo's prior representations of others.

---

[1]Castillo also sent a letter to VanHoesen advising him of such dangers.  See Docket No. 34 (sealed document).

[2]Such a hearing is generally referred to in this circuit as a "Curcio hearing."  See, e.g., United States v, Perez, 325 F.3d 115, 119 (2d Cir. 2003); United States v. Schwarz, 283 F.3d 76, 95 (2d Cir. 2002).

## II. Discussion

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This provision comprehends the right of a criminal defendant to retain the counsel of his or her choice. United States v. Perez, 325 F.3d 115, 124-25 (2d Cir. 2003). "Hence, the '[c]hoice of counsel should not be unnecessarily obstructed by the court.'" Id. at 125 (quoting United States v. Bernstein, 533 F.2d 775, 788 (2d Cir. 1976)). The fundamental purpose served by this provision is to "assure fairness in the adversary criminal process." Wheat v. United States, 486 U.S. 153, 158 (1988). Thus, a Sixth Amendment analysis must focus "'on the adversarial process, not on the accused's relationship with his lawyer as such'" and "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. at 159 (quoting United States v. Cronic, 466 U.S. 648, 657 n.21 (1984)).

The Sixth Amendment right to the effective assistance of counsel includes the right to be represented by an attorney who is unburdened by conflicts of interest. Wood v. Georgia, 450 U.S. 261, 271 (1981); Perez, 325 F.3d at 125. This right may be infringed where an attorney has "(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance." Levy, 25 F.3d at 152. An actual conflict exists "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." United States v. Schwarz, 283 F.3d 76, 91 (2d Cir. 2002) (internal quotation marks omitted). A potential conflict exists where "the interests of the defendant

-6-

may place the attorney under inconsistent duties at some time in the future." United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998); see also Perez, 325 F.3d at 125.

Where circumstances are presented that place in conflict a defendant's right to the counsel of his or her choice and the right to conflict-free counsel, a court must engage in a three-step inquiry to determine whether counsel may continue or must be disqualified. First, the nature of the conflict must be examined to determine whether it is one which mandates disqualification per se or which may be waived by a defendant. Perez, 325 F.3d at 125-28. If the conflict may be waived, inquiry must be made of the defendant to determine if his or her waiver of conflict-free counsel is made knowingly and intentionally. Levy, 25 F.3d at 152-55. Finally, assuming a valid waiver, a determination must be made whether the "institutional interest in the rendition of just verdicts in criminal cases may be jeopardized . . . ." Wheat, 486 U.S. at 160.

## A. Waivable Conflicts

When a criminal defendant's right to counsel of choice collides with that defendant's right to conflict-free counsel, "the choice as to which right is to take precedence must generally be left to the defendant . . . ." Perez, 325 F.3d at 125. As the Second Circuit has reiterated, "courts will not 'assume too paternalistic an attitude in protecting the defendant from himself' and although the defendant's choice of counsel 'may sometimes seem woefully foolish' to the court, the choice remains his." Perez, 325 F.3d at 126 (quoting Curcio, 694 F.2d at 25). The Second Circuit, however, has identified a "very narrow category" of conflicts which, because of their pervasive, divisive effect on an attorney's loyalties, will so impair that attorney's effectiveness as to require disqualification per se.

Perez, 325 F.3d at 126.

Such conflicts are those which substantially implicate an attorney's self-interest and place that self-interest in opposition to the best interests of the defendant.  For example, in United States v. Fulton, 5 F.3d 605 (2d Cir. 1993), the defendant was charged with conspiracy to possess and import heroin.  A government witness reported that the defendant's attorney had personally participated in a related heroin importation.  The attorney continued to represent the defendant through trial, the defendant was convicted, and he appealed.  On appeal, the Second Circuit held that the allegation against the attorney created an actual conflict of interest which pitted the attorney's self-interest in avoiding criminal liability and damage to his reputation against the interests of the defendant throughout the trial and sentencing.  Because this conflict was so severe that it constituted a per se violation of the Sixth Amendment and was not subject to waiver, the conviction was reversed and remanded for retrial.  Id. at 612-13 (finding that conflict was so great that it would "affect virtually every aspect of [counsel's] representation of the defendant").

In Schwarz, police officers were charged with assaulting a suspect in custody. Before trial, Schwarz's attorney formed a new law firm which received a two-year $10 million retainer from the Police Benevolent Association ("PBA").  The PBA was concurrently a defendant in a civil action brought by the victim of the assault alleging a cover-up.  The attorney represented Schwarz through the trial, Schwarz was convicted, and he appealed. On appeal, the Second Circuit found that, in line with Fulton, the receipt of the PBA retainer by the attorney's law firm and the attorney's financial self-interest in ensuring continued retention of the PBA as a client throughout the two-year period created such a strong financial interest for the attorney that his interests and those of Schwarz necessarily

diverged.  Thus, there existed "the distinct possibility . . . that at each point the conflict was felt, [counsel] would sacrifice Schwarz's interests for those of the PBA."  Id. at 96.  The court reversed Schwarz's conviction on this ground and remanded for a new trial.

In Perez, the Second Circuit emphasized the distinction between the unwaivable self-interest conflicts presented in Fulton and Schwarz and other conflicts of lesser magnitude.  There, the defendant was charged with a currency reporting violation when he failed to report the possession of approximately $211,335 upon arrival in New York City from the Dominican Republic.  The defendant was then employed as a paralegal by the attorney who represented him at trial.  That attorney also represented another individual who had been arrested eight days earlier upon arrival in New York City from the Dominican Republic for failing to report his possession of currency totaling approximately $211,772.  In both cases the currency was concealed in multiple aerosol cans.  325 F.3d at 119.  The government contended that (1) given the evident connection between the two cases, a potential conflict existed in representing both defendants; and (2) the defendant's attorney was a potential witness for the defendant to rebut the government's claim that the defendant was aware of the details of the violation the previous week from his employment with the attorney.  The district court declined to disqualify the defendant's counsel, the defendant was convicted, and he appealed.  On appeal, the Second Circuit held that "the conflicts cited by Perez were only potential, not actual, and they involved the rather routine discrete problems that arise when counsel's loyalty is divided among multiple clients.  Such conflicts can be knowingly and intelligently waived . . . ."  Id. at 127-28.  The court also held that the fact that the attorney was a potential witness for the defendant was likewise subject to waiver.  The conviction was affirmed.

Here, the conflicts at issue are those arising solely from Castillo's prior representation of Jermaine and six government witnesses.  There is no contention that Castillo has any conflicting financial interest and no claim or evidence that he is affected by any other type of self-interest which might impair his representation of VanHoesen.  Moreover, his previously concurrent representation of Jermaine in VanHoesen I has now ended and he no longer owes any duty to Jermaine.  Thus, the conflicts affecting Castillo's representation of VanHoesen now are those solely arising from his prior representations of Jermaine and the six potential government witnesses.  None of those conflicts implicate any self-interest of Castillo but are limited to the realm of potential conflicts consistently found waivable.  The conflicts present here, therefore, do not require Castillo's disqualification per se and may be waived.

## B. Waiver

Upon notice that an attorney may be affected by a conflict of interest, a court must conduct an inquiry to determine the details of any conflict.  Levy, 25 F.3d at 153.  If that inquiry reveals that an attorney in fact suffers from "a lesser or only a potential conflict – such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation – the court should follow the procedures set out in Curcio, . . . in order to obtain directly from the defendant a valid waiver of his right to a non-conflicted lawyer . . . ." Id. (internal citation omitted).  The obligation to conduct these inquiries arises from a trial court's "independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." Wheat, 486 U.S. at 161; Levy, 25 F.3d at 153. The failure to conduct these inquiries mandates automatic reversal of any conviction. Levy,

25 F.3d at 153-54.

Here, a Curcio hearing was held on July 3 and 17, 2007.  VanHoesen was present throughout.  During the first part of that hearing, the government's attorney and Castillo detailed the individuals in the case whom Castillo had previously represented, setting forth the dates, nature, and results of those prior representations.  From that record, there is no dispute that Castillo previously represented Jermaine in two criminal proceedings[3] and had represented six of the government's potential witnesses in various state court criminal proceedings over the course of the previous ten years.  Thus, Castillo's prior representations of these individuals created no existing, actual conflict but rather potential conflicts.  Those potential conflicts could arise only when Castillo's prior clients testified at trial and he was required to cross-examine them without reference to any information obtained by him in communications protected by the attorney-client privilege.  See Lorizzo, 786 F.2d at 57; United States v. Gotti, 9 F. Supp. 2d 320, 324 (S.D.N.Y. 1998) ("[I]f prior confidences are respected, the representation of the new client might be ineffective due, for example, to the inability of counsel to conduct a thorough cross-examination.").

At the hearing on July 3, 2007, Jermaine waived the protection of the attorney-client privilege as to his representation by Castillo.  Jermaine was advised during the proceeding by his current counsel and made a knowing, voluntary, and intelligent waiver of that protection.  Jermaine's waiver obviates the potential conflict created by his prior

---

[3]As noted above, at the time of the hearing on July 3, 2007, Castillo's representation of Jermaine in VanHoesen I was ongoing.  However, at the hearing on July 17, 2007, Castillo advised, and the government confirmed, that VanHoesen I had been dismissed in favor of the above-captioned federal prosecution and that Castillo was no longer representing Jermaine in any capacity.

representation by Castillo, who would now be free to cross-examine Jermaine without restriction if Jermaine testifies at trial.  See United States v. Leslie, 103 F.3d 1093, 1098 (2d Cir. 1997) (affirming that waiver of attorney-client privilege "obviated" any conflict); Gotti, 9 F. Supp. 2d at 325 ("We see no reason why these waivers do not adequately address the issues raised by [counsel's] prior representation of [a co-defendant]."). As to Castillo's prior representation of Jermaine, then, no actual or potential conflict exists.[4]

A potential conflict remains, however, as to the six potential government witnesses previously represented by Castillo.  Those conflicts, though, are potential, not actual.  Such conflicts may be waived by a criminal defendant if done knowingly and intelligently.  See Perez, 325 F.3d at 127 ("[L]esser conflicts, such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable."); Fulton, 5 F.3d at 613.

The waiver proffered by VanHoesen was both knowing and intelligent.  During the Curcio proceedings, VanHoesen demonstrated from his demeanor and responses that he was sufficiently intelligent and experienced in the criminal justice system to understand the issues presented and to make rational choices.  VanHoesen was advised at least three times of the dangers to his interests existing from Castillo's prior representations.  First, Castillo advised VanHoesen both orally and in writing (Docket No. 34) of those dangers.

---

[4]A different finding might have obtained absent the recent dismissal of VanHoesen I.  Absent the dismissal, Castillo would have a duty of loyalty to Jermaine which was ongoing, unaffected by Jermaine's waiver of the attorney-client privilege, and created a conflict of enhanced severity given the overlap between VanHoesen I and this case.  The dismissal of VanHoesen I and the cessation of Castillo's representation of Jermaine, however, terminated Castillo's ethical and professional obligation of loyalty to Jermaine and thus removed from consideration an actual conflict of interest.

Second, at the proceeding on July 3, 2007, VanHoesen was advised by the Court and counsel of those dangers.  Finally, an attorney was appointed by the Court to counsel VanHoesen independently about the dangers and to answer any questions.  Docket No. 33. VanHoesen met with that attorney privately prior to the hearing on July 17, 2007 and confirmed that he had asked the attorney all questions he then had about continuing to be represented by Castillo.  At the hearing on July 17, VanHoesen stated in his own words his understanding of the dangers which confirmed his understanding.  VanHoesen then expresses his unequivocal desire to continue to be represented by Castillo and waived any objection to the potential conflicts of interest.  VanHoesen' waiver was both knowing and intelligent.

### C. Institutional Concerns

Notwithstanding an otherwise valid waiver by a criminal defendant, disqualification may be required where the conflicts are so egregious as to jeopardize the integrity of the judicial process.  Wheat, 486 U.S. at 162-63; Perez, 325 F.3d at 125-26; United States v. Locasio, 6 F.3d 924, 935 (2d Cir. 1993); United States v. Ramos, 350 F. Supp. 2d 413, 423-24 (S.D.N.Y. 2004).  A trial court is accorded substantial discretion in making this determination.  Wheat, 486 U.S. at 163.  In making this determination, a court must recognize a presumption in favor of protecting a criminal defendant's right to counsel of choice.   See Wheat, 486 U.S. at 160; Perez, 325 F.3d at 124-25 (holding that the right to counsel of choice derives from the Sixth Amendment).

Courts have found that this presumption has been overcome only in limited circumstances.  For example, disqualification has been ordered over a criminal defendant's

waiver where counsel had functioned as the "house counsel" for the alleged criminal enterprise, Locasio, 6 F.3d at 932-33; Gotti, 9 F. Supp. 2d at 329-31; where counsel was present for events at issue and would function at trial as an unsworn witness, Locasio, 6 F.3d at 933-34; and where, in a capital case, the defendant's assigned counsel was under indictment for making false statements in unrelated appointed counsel vouchers, Ramos, 350 F. Supp. 2d at 423-28.

No such extraordinary circumstances are presented here.  The conflicts at issue are those arising from Castillo's past representations and most are now many years past. These conflicts are of a nature that frequently occurs in criminal cases and can generally be adequately resolved by a knowing and intelligent waiver.  Without more, such potential conflicts create no reasonable likelihood that the integrity of the proceedings in this case will be imperiled by Castillo's continued representation of VanHoesen.  Accordingly, the presumption in favor of VanHoesen's counsel of choice prevails,  VanHoesen's waiver is accepted, and the motion to disqualify Castillo is denied.

### III. Conclusion

For the reasons stated above, the motion of the United States to disqualify Castillo as counsel for VanHoesen is **DENIED**.

**IT IS SO ORDERED.**

DATED:  July 19, 2007
       Albany, New York

_____
United States Magistrate Judge

-14-